FILED

2026 Mar-06  AM 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CAROL ANN SALMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:25-cv-01133-HNJ |
| | ) | |
| YORKTOWN SYSTEMS GROUP | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case proceeds before the court on Defendant's motion to dismiss.  (Doc. 6).  For the reasons set forth herein, the court **WILL GRANT** Defendant's motion, and it **WILL DISMISS** Plaintiff's claims **WITH PREJUDICE** because Plaintiff failed to timely file this action.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8, governing pleading, calls for a short and plain statement of a claim, which, if established, entitles the pleader to relief.  *See Dees v. Lamar*, No. 2:20-cv-1326-LSC-GMB, 2020 WL 13750276, at *2 (N.D. Ala. Nov. 30, 2020) (noting Rule 8(a)(1) requires a plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests").  Relatedly, Federal Rule of Civil Procedure Rule 12(b)(6) permits a court to dismiss a complaint if it fails to state a claim for which relief may be granted.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court revisited the applicable standard governing Rule 12(b)(6) motions to dismiss. First, courts must take note of the elements a plaintiff must plead to state the applicable claims at issue. *Id.* at 675.

After establishing the elements of the claim at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity. *Id.* at 679. Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action. *Id.* at 678 (citations omitted). In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements. *Iqbal*, 556 U.S. at 678. Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense." *Id.* at 678, 679 (citations omitted). The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are "merely consistent with a defendant's liability." *Id.* (citations omitted).

2

While the court should extend *pro se* complaints some measure of leniency, *see Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11ᵗʰ Cir. 2002), "nothing in that leniency would excuse a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure." *Johnson v. Mobile County Sheriff Dept.*, No. 06-0821-WS-B, 2007 WL 2023488, at *3 (S.D. Ala. July 9, 2007) (citing *Loren v. Sasser*, 309 F.3d 1296, 1304 (11ᵗʰ Cir. 2002) ("Despite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules.")); *Moon v. Newsome*, 863 F.2d 835, 837 (11ᵗʰ Cir. 1989) (a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure")).

## BACKGROUND

On September 20, 2023, Plaintiff Carol Ann Salmon filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). (Doc. 1, at 6, 13). She alleged her employer former, Yorktown Systems Group ("Yorktown"), retaliated against her and discriminated against her on the basis of sex. (*Id.* at 13). She stated:

> Adverse actions including termination on 27 March 2023 were taken against me as Command Language Program Coordinator (CLPC) for communicating with the Government Customer. During a Teams meeting a couple months earlier, when he described communicating with the same Government Customer, a male CLPC was not terminated. According to an email I received 5 May 2023, CLPCs are expected and directed to communicate with the Government Customer.

(*Id*). On June 13, 2024, Salmon received a Determination and Notice of Rights letter

3

from the EEOC, informing her of her right to file a federal lawsuit within 90 days. (*Id.* at 6, 14).

On September 6, 2024, within the 90-day period, Salmon filed a *pro se* Complaint against Yorktown in the United States District Court for the Middle District of North Carolina. (Doc. 6-1, at 2).[1]  As recounted in a decision issued by the MDNC court, Salmon alleged gender discrimination pursuant to Title VII of the Civil Rights Act of 1964. (Doc. 6-2, at 2). The court briefly recited Salmon's factual allegations as follows:

> Plaintiff alleges that her employer, Defendant Yorktown, discriminated against her based on her gender. . . .  First, she alleges that she was subject to disciplinary action based on gender. . . .  Second, she alleges that she was wrongfully terminated based on her gender. . . .  Third, she alleges that she was subject to "gender-targeted gaslighting" by her employer. . . .
>
> Plaintiff also alleges employer misconduct unrelated to her gender. She alleges that her employers removed certain information from email messages they forwarded to her, . . . and that her employer "failed to inform the Government for over a month that they terminated [her] . . . .

---

[1] Normally, the court may not consider matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment and providing the parties an opportunity to submit pertinent material. Fed. R. Civ. P. 12(d). "However, '[t]here are two exceptions to th[e] conversion rule: (1) the incorporation-by-reference doctrine and (2) judicial notice.'" *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11ᵗʰ Cir. 2024) (alteration in original) (quoting *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11ᵗʰ Cir. 2023)). "[A] court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Id.* at 1300. Here, no party has challenged the authenticity of the pleadings from the Middle District of North Carolina action, and the documents centrally relate to Salmon's claims. In addition, the court may take judicial notice of the Middle District of North Carolina pleadings as public records. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11ᵗʰ Cir. 2006) ("Public records are among the permissible facts that a district court may consider.").

(*Id.* at 3 (alteration in original)).

On December 17, 2024, Yorktown moved to dismiss Salmon's Complaint for lack of personal jurisdiction and improper venue or, alternatively, to transfer venue. (Doc. 6-1, at 4; Doc. 6-2, at 2).  On June 18, 2025, the MDNC court granted the motion and dismissed the case without prejudice.  (Doc. 6-1, at 5; Doc. 6-2).  The court determined the Middle District of North Carolina lacked jurisdiction over Yorktown, a Delaware corporation with its corporate headquarters and principal place of business in Huntsville, Alabama.  (Doc. 6-2, at 3-11).  The court also noted: "Plaintiff filed a stipulation consenting to transfer.  This court has declined to adopt that stipulation for two reasons.  First, without personal jurisdiction over Defendant, that order is at best problematic.  Second, this court does not have authority to order Defendant to reimburse expenses to Plaintiff."  (*Id.* at 10 n.4).

Yorktown later filed a complete copy of Salmon's stipulation, further elucidating its significance.  It reads:

PLAINTIFF'S CONSENT WITH STIPULATION(S) TO
DEFENDANT [sic] MOTION FOR VENUE TRANSFER

Plaintiff Carol Ann Salmon ("Plaintiff" or "Ms. Salmon") files this Consent to Defendant's Motion for Venue Transfer, but with stipulation(s) that Defendant cover any and all additional costs Plaintiff may incur as a result.  As grounds, Ms. Salmon submits as follows:

1.  To Plaintiff's knowledge, after Venue Transfer, Pro Se filings would need to be in person at:
   U.S. District Court

5

Northern District of Alabama
660 Gallatin Street, SW
Huntsville, AL  35801

2.    Huntsville, AL is 506 miles and an 8 hour drive from Greensboro, NC, where Plaintiff resides.  A round trip drive, plus time needed to visit Court offices, cannot be reasonably or safely completed on one day.

3. If Venue Transfer is granted, then it is reasonable for Defendant to reimburse Plaintiff at the regular Government Per Diem, lodging and mileage rates for any case-related travel, in addition to the original Relief requested.

4. If Venue Transfer is granted, then it is reasonable for Defendant to reimburse Plaintiff for attorney-related costs, if Plaintiff finds an Alabama-licensed attorney to represent her, in addition to the original Relief specified.

Based on the foregoing, Plaintiff consents to Venue Transfer with the stipulation(s) above.  Plaintiff continues to believe Justice is served by the original Relief specified for Plaintiff totaling $40,347.58, plus any additional case-related costs Plaintiff may incur due to Venue Transfer.

(Doc. 14-1, at 2).[2]

On July 14, 2025, Salmon filed the instant, *pro se* Complaint against Yorktown in this court.  (Doc. 1).  She alleges Yorktown, on the basis of gender, terminated her employment, subjected her to unequal terms and conditions of employment, retaliated against her, and subjected her to "adverse discussion and memorandum."  (*Id.* at 4-5).

---

[2] On September 30, 2025, after filing this action, Salmon stated that she now has "learned that [she] can file documents using the US Postal Services (USPS).  And it appears a status check planned for October 6, 2025 can be completed on-line."  (Doc. 15, at 1).

She further avers Yorktown engaged in a "pattern of adverse action toward female, but not male, employees in equivalent situations." (*Id*. at 5).

As a factual basis for her claim, Salmon alleges that on March 22, 2023, Yorktown subjected her to a "Performance Discussion" and asked her to sign a "punitive Memorandum" wrongly criticizing her communication with an "individual(s) with whom [she] was expected and directed to communicate." (*Id*. at 8). On March 27, 2023, Yorktown terminated Salmon's employment, effective immediately. Salmon asked Yorktown to pay some of her living expenses, but Yorktown declined. (*Id*. at 8-9).

Salmon alleges Yorktown and, specifically, Program Manager Yakub Yusufoff, gaslighted her and discriminated against her because of her gender. In late 2022, a male employee communicated with the same person Yorktown punished Salmon for communicating with, yet the male employee retained his employment. Moreover, the male employee possessed a less suitable background for the position than Salmon. (*Id*. at 9).

Salmon disputes she wrongfully corresponded with the individual Yorktown punished her for contacting; she asserts performance of her job duties required the correspondence seeking clarification about a prior communication, and she suggests someone else may have forwarded her correspondence to the pertinent individual. (Doc. 1, at 10). Salmon also contests Yorktown's argument that it received complaints

about her misconduct and poor performance, and she surmises Yorktown must have attempted to avoid including positive information in her personnel file as well as conceal how Yusufoff's actions interfered with mission objectives. (*Id*).

Salmon alleges Yusufoff and Chris Hardy, another Yorktown employee, "removed email header information from messages that they forwarded to" Salmon. (*Id*. at 9). Finally, she alleges Yorktown did not inform the government client of her termination for over a month. (*Id*. at 11).

As compensation, Salmon requests $4,647.58 for living expenses resulting from the allegedly premature termination of her employment, and $35,700 in regular pay she would have received between April 1 and November 1, 2023. (*Id*. at 6).

The allegations of Salmon's Complaint in this action mostly mirror those of her Complaint in the Middle District of North Carolina.

## DISCUSSION

Yorktown seeks dismissal of Salmon's Title VII claims because she did not file this case within 90 days of receiving notice from the EEOC of her right to sue.

> An employee must exhaust administrative remedies before filing a complaint of discrimination under Title VII of the Civil Rights Act . . . . *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (Title VII) . . . . "The first step down th[e] path [to exhaustion] is filing a timely charge of discrimination with the [Equal Employment Opportunity Commission (EEOC)]." *Wilkerson*, 270 F.3d at 1317. If the Commission determines after an investigation "that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify" the employee. 42 U.S.C. § 2000e-5(b). When the employee

8

receives a notice of dismissal from the Commission, she has 90 days to
file a civil action against the employer. *Id.* § 2000e-5(f)(1).

*Stamper v. Duval Cty. Sch. Bd.*, 863 F.3d 1336, 1339-40 (11th Cir. 2017) (first and second

alterations in original); *see also Santini v. Cleveland Clinic Fla.,* 232 F.3d 823, 825 (11th Cir.

2000) (citing *Zillyette v. Capital One Fin. Corp.,* 179 F.3d 1337, 1339-41 (11th Cir. 1999)

("Title VII . . . actions may not be brought more than 90 days after a complainant has

adequate notice that the EEOC has dismissed the Charge.")).

Salmon received the EEOC's Determination and Notice of Rights letter on June

13, 2024.  (Doc. 1, at 6).  She filed this action on July 14, 2025, more than a year later.

Ordinarily, that delay would present a time bar to Salmon's claim.  However, the court

must consider whether Salmon's September 6, 2024, filing of a Complaint against

Yorktown in the United States District Court for the Middle District of North Carolina

tolled the limitations period.[3]

The doctrine of equitable tolling applies to the 90-day deadline for filing a lawsuit

after receiving a notice of right to sue from the EEOC.  *See Mesidor v. Waste Mgmt., Inc.*

*of Fla.*, 606 F. App'x 934, 936 (11th Cir. 2015) (per curiam) (citing *Irwin v. Dep't of Veterans*

*Affairs*, 498 U.S. 89, 95-96 (1990) ("Title VII's ninety-day filing requirement is subject

---

[3] Yorktown preemptively argued against the doctrine of equitable tolling in its motion to dismiss. (Doc. 6, at 5 ("The doctrine of equitable tolling does not save Ms. Salmon's case.")). Salmon also raised a tolling argument in her response to the motion to dismiss, though she did not employ that exact terminology. (Doc. 13, at 2-3). As discussed, the court must liberally construe *pro se* filings. *See, e.g., Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002).

to equitable tolling.")); *see also Jones v. Wynne*, 266 F. App'x 903, 905 (11th Cir. 2008) (per

curiam) (citing *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1525-26 (11th Cir.

1983) ("We view filing within the 90 day period as a condition precedent subject to

equitable tolling or waiver, rather than as a jurisdictional bar.")).

> "The doctrine of equitable tolling allows a court to toll the statute of limitations until such a time that the court determines would have been fair for the statute of limitations to begin running on the plaintiff's claims." *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006). "Equitable tolling 'is an extraordinary remedy which should be extended only sparingly.'" *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004) (quoting *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993)). Thus, "[e]quitable tolling is appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond his control and unavoidable even with diligence." *Arce*, 434 F.3d at 1261 (emphasis in original) (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)); *see also Motta ex rel. A.M. v. United States*, 717 F.3d 840, 846-47 (11th Cir. 2013) (holding that equitable tolling "cannot be applied to this FTCA claim because the untimely filing could have been avoided with due diligence"). The plaintiff has the burden of proving that such extraordinary circumstances exist. *Arce*, 434 F.3d at 1261; *accord Bost*, 372 F.3d at 1242; *see also Diaz v. Sec'y for Dep't of Corr.*, 362 F.3d 698, 701 (11th Cir. 2004) (noting the "difficult burden" of demonstrating entitlement to equitable tolling). As to the diligence inquiry, we have stated that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) (quoting *Holland v. Florida*, 560 U.S. 631, 653, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010)). "But the principles of equitable tolling . . . do not extend to . . . a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990); *accord Motta*, 717 F.3d at 846-47; *Justice*, 6 F.3d at 1480.

*Dotson v. United States*, 30 F.4th 1259, 1268-69 (11th Cir. 2022) (alterations in original).

Generally, "[d]ismissal of a complaint, without prejudice, does not allow a later

complaint to be filed outside the statute of limitations." *Bost*, 372 F.3d at 1242 (citing *Stein v. Reynolds Sec., Inc.,* 667 F.2d 33, 34 (11th Cir. 1982)); *see also Justice,* 6 F.3d at 1478 (quoting *Stein*, 667 F.2d at 34 ("'The fact that dismissal of an earlier suit was without prejudice . . . does not authorize a subsequent suit brought outside of the otherwise binding period of limitations.'")).  Even so, the doctrine of equitable tolling *may* extend the limitations period based upon a previous timely filing, *if* "plaintiffs . . . establish that tolling is warranted."  *Bost*, 372 F.3d at 1242 (citing *Justice,* 6 F.3d at 1479); *cf. Foudy v. Indian River Cnty. Sheriff's Off.*, 845 F.3d 1117, 1126 (11th Cir. 2017) (citing *Justice,* 6 F.3d at 1479-80 (emphasis supplied) ("The statute of limitations is not automatically tolled in such a situation, *absent some additional reason*.")).

Salmon's *pro se* status does not automatically warrant equitable tolling.  *See Bray v. Bank of Am., N.A.*, 763 F. App'x 808, 811 (11th Cir. 2019) (citing *Jackson v. Astrue*, 506 F.3d 1349, 1356 (11th Cir. 2007); *Wakefield v. R.R. Ret. Bd.*, 131 F.3d 967, 969-70 (11th Cir. 1997) ("Neither Bray's *pro se* status nor his ignorance of the law, by itself, provides a basis for equitable tolling.")); *Christides v. Comm'r of Soc. Sec.*, 478 F. App'x 581, 584 (11th Cir. 2012) (same).[4]

Salmon has not presented any rationale or evidence regarding the equitable

---

[4] In addition to the cited authority directly addressing a litigant's *pro se* status as a justification for applying equitable tolling, the Eleventh Circuit has issued other unpublished opinions declining to apply equitable tolling under similar circumstances to cases involving *pro se* litigants.  *See Williams v. Georgia Dep't of Def. Nat. Guard Headquarters*, 147 F. App'x 134, 136 (11th Cir. 2005); *Weldon v. Elec. Data Sys. Corp.*, 138 F. App'x 136, 138 (11th Cir. 2005).

tolling doctrine. On the record at bar, her best entreaty under the doctrine would emanate from the MDNC court's decision to dismiss her case rather than transfer it to this district, yet she still would not be able to demonstrate equitable tolling due to the lack of diligence vis-à-vis challenging the dismissal.

Pursuant to statutory authority:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court *shall*, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (emphasis added).

As a plethora of decisions establish, courts should transfer cases over which they lack jurisdiction if dismissal would preclude consideration of the merits due to statute-of-limitations problem. *See Boyer v. Wilkie*, No. 2:19-CV-00552-JEO, 2020 WL 733181, at *1 (N.D. Ala. Feb. 13, 2020) (transferring case in the interest of justice, rather than dismissing, when the statute of limitations had likely run, and the plaintiff had not acted in bad faith); *Snow v. Gen. Elec. Co.*, No. 7:17-CV-01961-LSC, 2018 WL 3719849, at *6 (N.D. Ala. Aug. 3, 2018) (interest of justice warranted transfer pursuant to § 1631 when statute of limitations had run on plaintiff's claim); *Clanton v. Bohannon*, No. CV-07-BE-

1942-M, 2008 WL 11336752, at *2 (N.D. Ala. Mar. 27, 2008) ("The lack of jurisdiction precludes this court's power to adjudicate the case but does not prevent the court from transferring the case under Section 1631." (citing *ITT Base Servs. v. Hickson*, 155 F.3d 1272, 1276 (11th Cir. 1998); *Slatick v. Dep't of Labor*, 698 F.2d 433, 434 (11th Cir. 1983))). *Brown v. Ford Motor Co.*, 347 F. Supp. 3d 1347, 1351 (N.D. Ga. 2018) (ruling that even if § 1631 permitted a transfer, it was not within the interest of justice to do so in part because "there ha[d] been no argument that transfer would prevent an issue regarding the statute of limitations"); *c.f.*, *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 430 n.7 (1965) ("Numerous cases hold that when dismissal of an action for improper venue would terminate rights without a hearing on the merits because [the] plaintiff's action would be barred by a statute of limitations, the interest of justice requires that the cause be transferred." (internal quotation marks omitted)), *cited in*, *Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332, 1341 (11th Cir. 2023); *Robertson v. Northcutt*, 850 F.2d 690 (4th Cir. 1988) ("A majority of federal courts have recognized that it is in the interest of justice to transfer a case rather than dismiss when refiling in the proper court would be barred by the applicable statute of limitations.") (citations omitted); *Crowe v. Paragon Relocation Res., Inc.*, 506 F. Supp. 2d 1113, 1126 (N.D. Fla. 2007) ("The interest of justice *requires* transfer of this case as opposed to dismissal because a dismissal would likely result in Crowe being barred from later refiling his action in a court of proper jurisdiction due to the statutory ninety-day filing period under Title VII.") (emphasis added) (citation omitted);

*Dumas v. Mohawk Field Servs., Inc.*, No. CV 23-3251, 2023 WL 7329113, at *2 (E.D. La. Nov. 7, 2023) ("Dismissing Plaintiffs' complaint at this point would effectively be a dismissal with prejudice of her Title VII claim as the 90-day period within which to file suit after receipt of the EEOC Notice of a Right to Sue would have expired. In that situation, courts typically employ [28 U.S.C.] § 1406(a) transfers to protect the plaintiff against a procedural bar to refiling her claim." (citing, *inter alia*, *Aguacate Consol. Mines, Inc. v. Deeprock, Inc.*, 566 F.2d 523, 524-25 (5ᵗʰ Cir. 1978) (finding transfer of case to advance "the interest of justice and procedural simplification underlying 28 U.S.C. § 1406(a) where part of plaintiff's claim was potentially barred by statute of limitations"); *Koehring Co. v. Hyde Const. Co.*, 324 F.2d 295, 297 (5ᵗʰ Cir. 1963) (recognizing that "the interest of justice" may require a transfer under § 1406(a) to avoid penalizing a plaintiff with "time-consuming and justice-defeating technicalities," in that case, a statute of limitations bar))) (footnotes omitted); *Jennings-Jones v. Sylacauga Health Care Auth.*, No. 2:23-CV-574-MHT-JTA, 2023 WL 8794607, at *2 (M.D. Ala. Oct. 25, 2023) (finding transfer of Title VII action preferable in the interest of justice because dismissal for improper venue would likely have prevented plaintiff from refiling in the proper venue due to expiration of the 90-day filing period), *report and recommendation adopted*, No. 2:23-CV-574-MHT, 2023 WL 8794564 (M.D. Ala. Dec. 19, 2023).[5]

---

[5] Although § 1631 – along with the § 1406 venue statute – provide a court *shall* transfer a case in the interest of justice when it lacks appropriate authority to adjudicate a case, and some decisions "require" such transfer when a limitations period has expired, most of the cases cited couch a court's transfer

Several Circuit Courts of Appeal have explicitly held that § 1631 extends to dismissals for lack of personal jurisdiction as well as dismissals for lack of subject matter jurisdiction. *See North v. Ubiquity, Inc.*, 72 F.4th 221, 227 (7th Cir. 2023) ("[E]very circuit court to address this issue has agreed that § 1631's reference to 'jurisdiction' encompasses personal jurisdiction as well as subject matter jurisdiction."); *Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 795 (5th Cir. 2021) ("[T]he use of the term 'jurisdiction' in § 1631 encompasses both subject-matter and personal jurisdiction. The statute therefore requires a transfer when a district court lacks either type of jurisdiction and the other statutory prerequisites are met."); *Fed. Home Loan Bank of Bos. v. Moody's Corp.*, 821 F.3d 102, 114 (1st Cir. 2016), *abrogated on other grounds by Lightfoot v. Cendant Mortg.*

---

power as permissive, not mandatory. Thus, the resort to the term "shall" in the statutes appears to represent occasions "when drafters have used the word improperly," reflecting "widely diverse" and "variegated meanings." Antonin Scalia and Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 112, 113 (2012); *see also De Martinez v. Lamagno*, 515 U.S. 417, 434 n.9 (1995) ("Though 'shall' generally means 'must,' legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.' . . . For example, certain of the Federal Rules use the word 'shall' to authorize, but not to require, judicial action. *See, e.g.,* Fed. Rule Civ. Proc. 16(e) ("The order following a final pretrial conference *shall* be modified only to prevent manifest injustice.") (emphasis added); Fed. Rule Crim. Proc. 11(b) (A *nolo contendere* plea "*shall* be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice." (emphasis added) (citing D. Mellinkoff, MELLINKOFF'S DICTIONARY OF AMERICAN LEGAL USAGE 402-03 (1992) ('shall' and 'may' are 'frequently treated as synonyms' and their meaning depends on context); B. Garner, DICTIONARY OF MODERN LEGAL USAGE 939 (2d ed. 1995) ("[C]ourts in virtually every English-speaking jurisdiction have held – by necessity – that *shall* means *may* in some contexts, and vice versa."")); 15 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 3842 (4th ed.) ("Though [§ 1631] says a court 'shall' transfer, that phrase is modified by 'if it is in the interest of justice.' The latter phrase gives the court discretion to transfer or to dismiss without prejudice. As the Supreme Court explained, Section 1631 gives a court 'authority to make a single decision upon concluding that it lacks jurisdiction – whether to dismiss the case or, 'in the interest of justice' to transfer it to a court * * * that has jurisdiction.'" (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818, (1988))) (footnote omitted).

*Corp.*, 580 U.S. 82 (2017) ("[W]e conclude that 'want of jurisdiction' encompasses both personal and subject matter jurisdiction.  It follows that § 1631's plain text supports a finding that its reference to 'want of jurisdiction' embraces both types of jurisdiction and permits a federal court to order transfer where it lacks either."); *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) ("In light of the language of § 1631 and its purpose, we therefore conclude that the statute applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction.").

Other Circuits, including the Eleventh Circuit, have more indirectly endorsed extending the coverage of § 1631 to defects of both personal and subject matter jurisdiction.  *See Okongwu v. Reno*, 229 F.3d 1327, 1331 n.3 (11th Cir. 2000) (stating "[n]othing in this opinion should be construed to prohibit transfer to cure lack of jurisdiction pursuant to 28 U.S.C. § 1631" after remanding case to district court to assess whether personal jurisdiction existed); *Johnson v. Woodcock*, 444 F.3d 953, 954 n.2 (8th Cir. 2006) (explaining district court could have transferred action under § 1631 to cure lack of personal jurisdiction); *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002) (explaining district court would have had authority to transfer action under § 1631 after finding it lacked personal jurisdiction); *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761-62 (9th Cir. 1990) (vacating and remanding to district court to consider transfer under § 1631 to cure lack of personal jurisdiction); *Ross v. Colorado*

*Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527-28 (10th Cir. 1987) (reviewing case that was transferred under § 1631 to Colorado district court after New York district court found it lacked personal jurisdiction).[6]

Hence, transferring Salmon's North Carolina case to this court, or to any other court with personal jurisdiction over Yorktown, would have served the interest of justice by allowing Salmon to pursue her claims on the merits. Nevertheless, Salmon failed to pursue available legal remedies to address any error by the MDNC court. It does not appear Salmon requested reconsideration of the decision or relief from the judgment under Federal Rule of Civil Procedure 60(b), nor did she appeal the decision to the Fourth Circuit Court of Appeals. This lack of diligence precludes relief under the equitable tolling doctrine.

Most poignantly, the Eleventh Circuit maintains that a plaintiff's failure to pursue

---

[6] The court notes one learned treatise advocates limiting § 1631's reach to subject matter jurisdiction only. *See id.* ("The better view is that Section 1631 is limited to subject matter jurisdiction defects and does not address problems with personal jurisdiction or venue."). Even so, the authors of the treatise recognize the "majority opinion has swung to the conclusion that 28 U.S.C.A. § 1631 applies to allow transfer to cure lack of subject matter jurisdiction, personal jurisdiction, or both." *Id.* This court finds that majority trend more persuasive. *See* 16 MOORE'S FEDERAL PRACTICE - CIVIL § 108.143 (2026) ("A First Circuit opinion, issued in 2016, makes a persuasive case . . . . After noting the opposing interpretations of the Section 1631 legislative history offered by the parties, the court turned to the text of the statute itself. Section 1631 speaks in terms of 'jurisdiction' and 'want of jurisdiction' without differentiating between the two 'well-known jurisdictional flavors.' Given that Congress is well-able to distinguish between subject matter and personal jurisdiction, and given the phrase 'want of jurisdiction' has an established meaning including both types, the court concluded that the unambiguous text of the statute encompasses both types of jurisdiction." (citing *Federal Home Loan Bank of Boston v. Moody's Corp.*, 821 F.3d 102, 113-115 (1st Cir. 2016), *abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82 (2017)).

available legal remedies prevented the plaintiff from invoking the doctrine of equitable tolling to extend a statutory limitations period. In *Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332 (11th Cir. 2023),

> Anthony Wright sued his former employer for allegedly underpaying him for overtime hours. Wright worked in Florida, but he sued Waste Pro USA, Inc., and its subsidiary, Waste Pro of Florida, Inc., as one of several named plaintiffs in a purported collective action in the District of South Carolina. That court dismissed Wright's claims against Waste Pro USA and Waste Pro of Florida for lack of personal jurisdiction, and it denied as moot his motion to sever his claims and transfer them to a district court in Florida. Instead of appealing or seeking other relief in the South Carolina court, Wright filed a complaint in the Southern District of Florida, alleging the same claims.

*Id.* at 1335. The Eleventh Circuit upheld the district court's grant of summary judgment in the defendants' favor due to expiration of the statute of limitations. *Id.*

Wright argued that his filing of the South Carolina action equitably tolled the statute of limitations, yet the Eleventh Circuit declined to apply the "extraordinary remedy" of equitable tolling to Wright's circumstances, reasoning that "'[e]quity's reach is quite modest when adequate legal remedies are available.'" *Id.* at 1340 (quoting *Justice*, 6 F.3d at 1479). Wright possessed, but did not avail himself of, legal remedies to challenge the dismissal of the South Carolina action. He "could have filed a protective action in Florida" or "a motion for reconsideration of or for relief from the dismissal order and argued that the transfer was in the interests of justice," or he could have "appealed the dismissal." *Id.* at 1341 (citations omitted). As "[a] diligent plaintiff"

would have taken one of those actions, the Court deemed any irreparable harm Wright suffered from expiration of the limitations period "'the consequence of his own failure to pursue his remedies at law.'"  *Id.* (quoting *Justice*, 6 F.3d at 1482).  "'Equity will not intervene in such circumstances.'"  *Wright,* 69 F. 4th at 1341 (quoting *Justice*, 6 F.3d at 1482).

The court observes that counsel represented Wright, while Salmon proceeds *pro se*.  Even so, as previously discussed, courts express reluctance to equitably toll a statue of limitations simply because a plaintiff proceeds *pro se*.  *See Bray,* 763 F. App'x at 811; *Jackson*, 506 F.3d at 1356; *Wakefield*, 131 F.3d at 969-70; *Christides,* 478 F. App'x at 584.  Moreover, the Eleventh Circuit has affirmed a district court decision declining to extend the equitable remedy of tolling to a *pro se* plaintiff who did not pursue available legal remedies.

In *Myers v. Clayton Cnty. Bd. of Commissioners*, No. 1:20-CV-5186-CAP, 2021 WL 3485293 (N.D. Ga. July 22, 2021), *aff'd*, No. 21-12636, 2022 WL 2463102 (11th Cir. July 6, 2022), Myers, who proceeded *pro se*, filed a complaint in the United States District Court for the Northern District of Georgia on March 4, 2020, asserting Title VII, ADEA, § 1983, and § 1981 claims against her former employer.  *Id.* at *1.  The district court dismissed that case without prejudice on November 24, 2020, due to Myers's failure to comply with the magistrate judge's instructions to file an amended complaint.  *Id.*  Myers filed another complaint in the same court on December 22, 2020, asserting

19

the same causes of action against the same defendants. However, she faced a timeliness bar, as the statute of limitations had expired on September 17, 2020, at the latest. *Id.* The district court declined to equitably toll the limitations period, as "Myers could have taken other steps to preserve her cause of action after the dismissal of her first case without prejudice," including filing a motion for reconsideration, moving for relief from the judgment, and appealing. *Id.* at *2 (citing *Justice*, 6 F.3d at 1480-81).[7] The district court did not afford any special provision for Myers's *pro se* status. And, as noted, the Eleventh Circuit affirmed the district court's decision, although it did so because Myers abandoned the issue on appeal by not raising it in her brief. *Myers*, 2022 WL 2463102, at *2.

Thus, even though the MDNC court may have transferred Salmon's Complaint to this district to forestall the limitations period issue, Salmon's failure to legally challenge that error prevents her from invoking the doctrine of equitable tolling. If Salmon cannot invoke equitable tolling to extend the statutory filing period, this court must conclude she untimely filed this case.[8]

---

[7] Though *Myers v. Clayton Cnty. Bd. of Commissioners*, No. 1:20-CV-5186-CAP, 2021 WL 3485293 (N.D. Ga. July 22, 2021), *aff'd*, No. 21-12636, 2022 WL 2463102 (11th Cir. July 6, 2022), predated *Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332 (11th Cir. 2023), the district court in *Myers* relied upon the Eleventh Circuit's decision in *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993), upon which the Eleventh Circuit relied in *Wright*.

[8] Because the time bar precludes Salmon's claims, the court need not address Yorktown's alternative argument that Salmon failed to state a claim upon which the court can grant relief.

In addition to equitable tolling, Salmon asserts a statutory tolling argument based upon 28 U.S.C. § 1367.[9]    Subsection (a) of that statute grants district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).    Pursuant to subsection (d):

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d).

Both Salmon's Middle District of North Carolina Complaint and her Complaint in this court assert solely federal statutory claims.  She did not rely upon § 1367 to extend supplemental jurisdiction to any state law claims.  Accordingly, the 30-day filing period in § 1367(d) does not apply in these circumstances, regardless of the MDNC's dismissal of her Complaint without prejudice.

As no basis exists for either equitable or statutory tolling, the court must conclude Salmon untimely filed her claims in this case.

---

[9] On July 9, 2025, less than 30 days after the Middle District of North Carolina dismissed her case on June 18, 2025, Salmon sent a letter to the Clerk of this court to file her Complaint in this action.  She stated that "[a] 28 U.S.C. § 1367(d) 30-day re-filing window appears to apply in this case." (Doc. 1, at 17).

21

## CONCLUSION

In accordance with the foregoing, the court **WILL GRANT** Yorktown's motion to dismiss, and it **WILL DISMISS** all of Salmon's claims **WITH PREJUDICE**. The court will enter a separate final judgment.

**DONE** this 6th day of March, 2026.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE